FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2010 JUL 21 PM 3:31
CLERK [signature]
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| GARY W. DUNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 109-084 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Gary W. Dunn appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits. Having considered the briefs submitted by counsel, the Commissioner's final decision, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED** and that a final judgment be **ENTERED** in favor of the Commissioner.

I.  **BACKGROUND**

Based upon claims of disability dating back to September 21, 2002, Plaintiff applied for DIB on July 3, 2003. Tr. ("R."), pp. 54-56. The Social Security Administration denied Plaintiff's original claim (R. 26-29), and his request for reconsideration (R. 31-33). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). R. 34. Represented by counsel, Plaintiff appeared and testified at a hearing on January 11, 2006. R. 362-76.

Vocational Expert ("VE") Robert Bradley also testified at the hearing. R. 373-75. The ALJ then issued an unfavorable decision dated July 26, 2006. R. 11-21. When the ALJ's unfavorable decision became the final decision of the Commissioner, Plaintiff filed a civil action in the United States District Court for the Southern District of Georgia requesting a reversal or remand of that adverse decision. The Honorable Dudley H. Bowen, Jr., United States District Judge, found that the Commissioner's final decision was due to be reversed, and the case was remanded to the Commissioner for further consideration. Dunn v. Astrue, Civil Case No. 106-156 (S.D. Ga. Dec. 13, 2007).

Upon remand, the Appeals Council ("AC") vacated the final decision of the ALJ. R. 416. A teleconference hearing was held on June 4, 2008. R. 548-609. The ALJ presided over the hearing from Savannah, Georgia, and Plaintiff, his wife, and his attorney appeared in Vidalia, Georgia. (Id.). Additionally, a medical expert and a VE also testified. The ALJ again issued an unfavorable decision dated November 24, 2008. R. 384-98.

Applying the five step sequential process required by 20 CFR § 404.1520, the ALJ found:

1. The claimant did not engage in substantial gainful activity at any time during the relevant period from his alleged onset date of September 21, 2002, through his last insured date of March 31, 2003. (20 CFR § 404.1571 *et seq.*).

2. The claimant has the following severe impairments: a partial tear of the right rotator cuff (shoulder injury) and degenerative disc disease of the cervical spine (20 CFR § 404.1521 *et seq.*).

3. These medically determinable impairments do not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant is unable to perform any of his past relevant work but has the residual functional capacity to lift/carry 25 pounds occasionally and 10 pounds frequently; he can sit, stand, or walk 6 hours in an 8-hour workday, and he must avoid overhead lifting.

5. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 201.25 and 202.18 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples include the following unskilled/sedentary jobs: sports equipment assembler, electrical equipment assembler, and optical inspector. Thus, the claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of this decision.

R. 384-98.

When the AC denied Plaintiff's request for review, the Commissioner's decision was "final" for the purpose of judicial review under 42 U.S.C. § 405(g). Having failed to convince the AC to review his case, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal or remand of that adverse decision. Plaintiff argues that the ALJ erred because he failed to properly consider the opinions of Plaintiff's treating physicians, failed to properly utilize the VE at the remand hearing, and failed to consider the evidence/record *de novo*. Pl.'s Br., pp. 13-18. The Commissioner maintains that 1) the ALJ properly evaluated all evidence including that of the treating physicians; 2) the hypothetical question posed to the VE by the ALJ accurately and comprehensively reflected the Plaintiff's characteristics; and 3) the ALJ performed a *de novo* review of the evidence. See generally Comm'r's Br.

## II. THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following

3

questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his

conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. Opinions of Treating Physicians

The Court first turns its attention to Plaintiff's allegation of error regarding the ALJ's decision to discount the opinions of Plaintiff's two treating physicians, Peter R. Preganz, M.D., and Harvey W. Schefsky, M.D., regarding Plaintiff's functional limitations. Plaintiff's treating physicians opined that Plaintiff had greater limitations than the ALJ attributed to him. R. 242, 351-52. Plaintiff argues that pursuant to the treating physicians' opinions, he is incapable of performing light work. Pl.'s Br., p. 14. The Commissioner, on the other hand, contends that the ALJ properly evaluated Drs. Preganz's and Schefsky's opinions, but discredited their opinions because they were unsupported by their clinical records. The Commissioner also maintains that the ALJ appropriately also considered all medical evidence of record to reach Plaintiff's RFC.[1] Comm'r Br., p. 9. (Id.) The Commissioner has the better argument.

In the Eleventh Circuit, a treating physician's opinion must be given substantial

---

[1] Although Plaintiff argues otherwise, the record is clear that upon remand, the AC vacated the prior decision (R. 416), and the ALJ considered the issue of Plaintiff's disability *de novo* and issued a decision based on his evaluation of the record.

5

weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (ruling that ALJ must accord substantial or considerable weight to opinion of treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (*per curiam*) (same). The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

Here, as noted above, Plaintiff challenges the ALJ's determination that Drs. Preganz's and Schefsky's opinions were not supported by their clinical records, and thus Plaintiff maintains that the ALJ improperly disregarded these opinions. Pl.'s Br., pp. 13-15. Contrary to Plaintiff's allegation, however, the record reflects that the ALJ considered the opinions of Drs. Preganz and Schefsky, and clearly articulated his reasons for discrediting them. First, the ALJ specifically listed the medical opinions/evidence upon which he relied on pages 8 through 12 of his opinion and then he gave specific reasons for discrediting the

opinions of Drs. Preganz and Schefsky. R. 391-95. In fact, Plaintiff, in his brief, recounts the ALJ's findings and reasons for discrediting the opinions of Plaintiff's treating physicians. Pl.'s Br., pp. 9-10. The fact that Plaintiff disagrees with the ALJ's stated reasons, without more, does not show error in the ALJ's assessment.

A treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Dr. Schefsky opined (eight months after Plaintiff's date of last insured) that Plaintiff could not lift more than 10 pounds on an infrequent basis, had a decreased range of motion in his neck by 30%, and decreased range of motion in both shoulders by 60%. R. 242. Dr. Preganz opined that due to his upper extremity problems, Plaintiff had a significant ongoing and permanent limitation in regards to prolonged standing and lifting, and could not lift anything more than 5 pounds for any period of time. R. 351-52. In this case the ALJ found, and the substantial evidence supports, that Drs. Preganz's and Schefsky's opinions were not supported by their own clinical records. R. 394-96.

In discrediting the opinion of Dr. Schefsky, the ALJ relied on an MRI of Plaintiff's shoulder dated September 16, 2002 that revealed "relatively stable features" referable to incomplete rotator cuff tear (R. 143, 391-96), and noted Dr. Schefsky's opinion that this MRI scan did not show any progression of the rotator cuff tear (R. 277, 391-96). The ALJ also noted Dr. Schefsky's office notes that indicated improvement in Plaintiff's pain.[2] Next, the ALJ noted that the January 2003 cervical spine MRI "did not show anything significant

---

[2] For example, the October 15, 2002 office notes stated that Plaintiff was using less pain medication, as he had several Lorcet left over from the prior month. R. 277.

7

change-wise," and Dr. Schefsky's opinion that there was only "minimal" bulging. R. 267, 273, 391-96. The ALJ noted that Dr. Schefsky's February 6, 2003 office notes show, contrary to Dr. Schefsky's opinion that Plaintiff had a decreased range of motion in his neck and shoulders, that there was "no significant limitation of motion" and no weakness or paresthesia with a normal neurological examination. R. 265, 391-96. Additionally, in February 2003 Dr. Schefsky opined that Plaintiff was "pretty stable now" and that he was "back to his usual self." (Id.) Again, although Plaintiff had some pain with the motion of his neck, there was "no significant limitation of motion" and no weakness or paresthesia with a normal neurological examination. (Id.)

Furthermore, the ALJ, relying on the treating physicians' medical records, found that Dr. Schefsky's medication list shows that Plaintiff received 30-day prescriptions for Oxycontin on October 15, 2002, November 11, 2002, and on February 6, 2003 and that he was out of his Oxycontin from March 7, 2003 through March 31, 2003, a period of 3 weeks. R. 268, 270, 391-96. Based on these lapses in pain medication, the ALJ determined that there was improvement concerning Plaintiff's pain because he was using less pain medication. R. 391-96.

As to Dr. Preganz, the ALJ explained that his reasons for discrediting his opinion that Plaintiff had significant ongoing and permanent limitation in regard to prolonged standing and lifting and he could not lift anything more than 5 pounds for any period of time due to his upper extremity problems were the following. Dr. Preganz's opinion in Exhibit 20F is not supported by his own office notes in Exhibit 16F. R. 351-52. For example, during the period at issue, none of Dr. Preganz's notes reveal the functional limitations (i.e. prolonged

standing and lifting no more than 5 pounds) he assessed on June 20, 2005, 18 months after Plaintiff's date-last-insured expired. R. 212-17, 391-96. Furthermore, Dr. Preganz treated Plaintiff during this period with cervical epidural injections with improvement.[3] Indeed, his reports repeatedly noted that Plaintiff demonstrated "good substantial improvement," that Plaintiff reported his medications were working much better for him, and that his symptoms were under "satisfactory control." R. 212-12, 391-96.

After discrediting the opinions of Drs. Preganz and Schefsky, as described above, the ALJ turned to the opinion of Dr. John Hancock, who is board certified in Orthopedic Surgery. R. 395-96. Not only did Dr. Hancock conclude that Dr. Schefsky's opinion lacked specificity, but more importantly, he opined that Plaintiff had no medically determinable impairment for any restrictions in walking, standing or sitting.

The ALJ also noted that Dr. Charles Weiss, reviewed the medical evidence in Plaintiff's file for the dates between September 21, 2001 and March 2003, and opined that Plaintiff could lift 25 pounds occasionally and 10 pounds frequently; he could stand, walk and sit each for greater than 6 hours in an 8-hour day; he had no pushing or pulling limitations and no other limitation. R. 349-50. The ALJ also noted that Dr. Weiss's opinion was corroborated by the opinion of Dr. Hancock. R. 391-96. Additionally, the ALJ found

---

[3]The ALJ also noted that Dr. Preganz's March 28, 2003 records do not support his conclusion – that Plaintiff had a significant ongoing and permanent limitation in regards to prolonged standing and lifting, and could not lift anything more than 5 pounds for any period of time – because they show that Plaintiff was undergoing cervical injections and "continuing to demonstrate good, substantial improvement." R. 212. Furthermore, on September 30, 2002, October 11, 2002, January 14, 2003, January 24, 2003, February 7, 2003, and March 28, 2003 Dr. Preganz stated during his examinations on those dates that claimant was in 'no acute distress." R. 212 -17, 391-96.

9

that the objective medical evidence in the record refuted Dr. Preganz's opinion. R. 391-96. The ALJ referred to the September 16, 2002 MRI that reflected that there was no progression of the rotator cuff tear. (Id.) The ALJ referred to the December 26, 2003 MRI of the cervical spine which revealed only minimal disc bulges at C4-5 and C6-7 which had not measurably changed since the last MRI dated October 10, 2000. R. 391-96. (Id.) This MRI also revealed minimal posterior disc bulge at C4-5 which evokes "less than 10% stenosis" Dr. Schefsky opined in January 2003 that Plaintiff's cervical spine MRI "did not show anything significant change-wise," and he indicated there was only "minimal" bulging. (Id.)

Concerning Plaintiff's argument that the ALJ erred in disregarding the treating physicians' opinions, where the treating physicians were the sole source of medical evidence relating to his impairing conditions (Pl.'s Br., pp. 12-13), this argument misses the mark. The ALJ's opinion shows that he did not rely solely on the non-examining physician opinions to refute the treating physicians' opinions. Rather, the record reflects that not only did the ALJ rely on the treating physicians' own clinical records to discredit their opinions, he also relied on the objective medical evidence. As the ALJ provided clearly articulated reasons for discrediting the treating physicians' opinions concerning Plaintiff's limitations, there was no error in the ALJ's assessment of their opinions.

### B. Utilization of VE at Hearing

Plaintiff also contends that the ALJ did not properly use the VE at the hearing because the hypothetical question presented by the ALJ did not include all of Plaintiff's limitations. Pl.'s Br., pp. 15-18. More specifically, Plaintiff argues that the ALJ did not include a limitation that the earlier ALJ had attributed to Plaintiff, i.e., "mild difficulties in

10

maintaining concentration, persistence, and pace" because of side effects from medication, and therefore, the ALJ failed to comply with the remand order. Pl.'s Br., p. 16.

The Commissioner states that based upon the ALJ's consideration and analysis of the evidentiary record, the ALJ determined that Plaintiff remained capable of performing a wide range of light exertional work; the ALJ did not find that Plaintiff had "mild difficulties in maintaining concentration, persistence, and pace." Comm'r Br., pp. 11-14. Stated otherwise, the Commissioner contends that the ALJ considered the issue of Plaintiff's disability *de novo* and made findings of fact based upon this *de novo* consideration. Additionally, the Commissioner contends that as a result of this *de novo* consideration of the evidentiary record, the ALJ, on remand, did not conclude that Plaintiff had the same limitations that the prior ALJ had found. (Id.) Therefore, contrary to Plaintiff's argument, the ALJ was not bound by the prior ALJ's determination that Plaintiff had "mild difficulties in maintaining concentration, persistence, and pace" because of side effects from medication. (Id.) Accordingly, the Commissioner argues that the ALJ's hypothetical question to the VE accurately and comprehensively reflected Plaintiff's medical-vocational profile.

At step four of the sequential evaluation process, the ALJ determined that Plaintiff was unable to perform his past relevant work but had the RFC to perform a range of light work, as set forth in detail herein at pages 2-3. Because Plaintiff could no longer perform his past relevant work, the burden shifted to the Commissioner to show the existence of other types of substantial gainful employment that Plaintiff could perform given his age, education, previous work experience, and RFC. In this regard, the ALJ properly consulted a VE in conjunction with the Medical-Vocational Guidelines. The record reflects that the ALJ asked

the VE the following:

> ... But suppose we have an individual who at all relevant times has been under the age of 47, has a ninth grade education, past relevant work as described. Would this individual be able to lift ten pounds occasionally with frequent lighter lifting or be able to sit eight hours total in a work day, and be able to walk and stand approximately two hours total in a work day and would have to avoid overhead lifting because of bilateral shoulder problems, but would be able to perform work with his arm extended straight out at 90 degrees. The individual, due to side effects from medication and from pain, would have to avoid operating dangerous equipment, motor vehicle, climbing ropes and ladders, working at unprotected heights, doing work requiring carrying a firearm. And this individual might occasionally have a brief laps of concentration, but in an eight-hour work day would be able to complete the assigned tasks. . . . Would there be any other work that such an individual could perform?

R. 601-02. In response, the VE stated that Plaintiff could perform the work of a sports equipment assembler, electrical appliance component assembler, and circuit board inspector. R. 602-03.

The ALJ then asked:

Okay. And if I were to find this individual could lift 25 pounds occasionally and ten pounds frequently, walk, stand, sit at least six hours each in an eight-hour work day, and did not have any other postural limits, but also would have to avoid overhead lifting and the other non physical limits that I gave such as avoid operating dangerous equipment, motor vehicles, climbing ropes and ladders, no working at unprotective heights, doing work requiring, using a firearm and would have occasional brief lapses of concentration but would be able to complete assigned tasks in an eight-hour work day, would that individual be able to do the occupations that you just described?

R. 603.

The VE responded, "Yes." (Id.)

Counsel for Plaintiff then asked whether the work the VE had delineated for Plaintiff would be eliminated if the VE assumed that the individual required an extra break time

12

because of health problems and pain, or would miss three or more days from work every month. R. 605-06. The VE responded that the individual may be able to do the work, but that it would be a judgment that the employer would have to make based on his performance. R. 606. As such, Plaintiff argues that when such limitations exist and require employer accommodations, the jobs cited by the VE are no longer available. Pl.'s Br., p. 17.

Of course, the underlying assumptions of hypothetical questions must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987) (*per curiam*); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985) (*per curiam*); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); Coleman v. Barnhart, 264 F. Supp.2d 1007, 1011 (S.D. Ala. 2003) (failing to comprehensively describe a claimant's impairments and limitations is grounds for remanding case for further proceedings).

The hypothetical in this case involved a person whose impairments included a shoulder injury and degenerative disc disease of the cervical spine. Additionally, contrary to Plaintiff's allegation, the ALJ considered Plaintiff's non-exertional impact regarding his medication that he took because of his pain. The record reflects that the hypothetical posed to the VE precluded work activity requiring overhead lifting, or any work activity which required the operation of dangerous equipment; operation of a motor vehicle the climbing of ropes and ladders, and any jobs requiring working at unprotected heights or work requiring

carrying a firearm, as well as occasionally experiencing a brief laps in concentration.[4] R. 602-03. Therefore, the ALJ's decision not to include the limitations alleged by Plaintiff was supported by the record. The ALJ accounted for Plaintiff's non-exertional limitations in his hypothetical question. Accordingly, the Court finds that the ALJ's hypothetical more than adequately accounted for his physical and non-exertional limitations.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED** and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 21st day of July, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[4]The Court is aware that Plaintiff argues that the ALJ failed to include that Plaintiff had "mild" difficulties maintaining concentration, persistence and pace," and that if the ALJ had included that limitation, the VE indicated that with such limitations, the jobs cited by the VE would not longer be available. Notably, however, the ALJ in his opinion specifically stated:

> While the Vocational Expert testified on cross-examination that having to take two extra breaks of 20-25 minutes each and missing 3 or more days per month due to medical impairments would preclude all jobs, **the evidence does not prove that the claimant has these types of limitations.**

R. 398 n.1 (emphasis added).

14